IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SAMUEL R. QUEEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 05-3341-KHV |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Samuel Queen, a former inmate at the United States Penitentiary in Leavenworth, Kansas (USP-Leavenworth), brings suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., alleging that he suffered an assault by another inmate because prison staff failed to monitor and supervise a stairwell. This matter is before the Court on Defendant's Motion to Dismiss And Cross-Motion For Summary Judgment (Doc. #39) filed June 9, 2006. For reasons stated below, defendant's motion is sustained.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## Factual Background

For purposes of defendant's motion for summary judgment, the following facts are uncontroverted,

2

deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.[1]

Plaintiff is a former inmate at USP-Leavenworth. On May 4, 2004, other inmates attacked him during a controlled movement in a stairwell at USP-Leavenworth. Plaintiff suffered cuts to his face and body from a razor-type weapon. Plaintiff remained in the stairwell some four to six minutes after the attack, but no prison staff arrived. As plaintiff exited the stairwell, officer Malafou T. Kiliona, who was outside

---

[1] The Court excludes plaintiff's additional statement of uncontroverted facts, see Plaintiff's Memorandum In Response To United States Motion To Dismiss, Response to Plaintiff's Motion For Summary Judgment And For Cross Motion For Summary Judgment (Doc. #66) ¶¶ 24-34, because the facts are not supported by references to the record as required by D. Kan. Rule 56.1(b)(2). The Court also excludes plaintiff's additional disputed factual issues, see id., ¶¶ 35-45, because they consist solely of legal questions or issues and plaintiff's version is not supported by references to the record as required by D. Kan. Rule 56.1(b)(2).

On August 30, 2006, the Court overruled plaintiff's motion for summary judgment. See Memorandum And Order (Doc. #63). In resolving defendant's motion for summary judgment, however, the Court has also considered plaintiff's arguments and evidence submitted in connection with his own motion for summary judgment, as well as plaintiff's sur-replies submitted in connection with defendant's motion. In sum, the Court has considered the following documents: Defendant's Motion to Dismiss And Cross-Motion For Summary Judgment (Doc. #39) filed June 9, 2006; Defendant's Memorandum In Support Of Motion To Dismiss, Response To Plaintiff's Motion For Summary Judgment, And For Cross-Motion For Summary Judgment (Doc. #40); plaintiff's Amended Complaint (Doc. #34) filed May 1, 2006; Plaintiff's Motion For Summary Judgment (Doc. #36) filed May 24, 2006; Plaintiff's Memorandum In Support Of His Motion For Summary Judgment (Doc. #37) filed May 24, 2006; Plaintiff's Motion To Deny United States Motion To Dismiss, Cross Motion For Summary Judgment And Response to Plaintiff's Summary Judgment Motion (Doc. #65) filed September 14, 2006; Plaintiff's Memorandum In Response To United States Motion To Dismiss, Response to Plaintiff's Motion For Summary Judgment And For Cross Motion For Summary Judgment (Doc. ##66 and 67) filed September 14, 2006; Plaintiff's Declaration In Opposition To United States Motion For Summary Judgment (Doc. #68) filed September 14, 2006; Defendant's Submission To The Court Under Seal Relative To Court's Order Of August 30, 2006 (Doc. 63) (Doc. #69) filed September 15, 2006; Defendant's Reply To Plaintiff's Response To Defendant's Motion To Dismiss Or In The Alternative For Summary Judgment (Doc. #72) filed October 6, 2006; Plaintiff's Surreply To Defendant's Response to Plaintiff's Response On Defendant's Motion To Dismiss Or In The Alternative Motion For Summary Judgment (Doc. #73) filed October 20, 2006; Plaintiff's Submission Of Documents To The Court Relative To Documents Submitted Under Seal By The Government (Doc. #78) filed November 30, 2006.

3

the stairwell controlling inmate movement, saw blood on plaintiff's face and called for assistance.[2]

No policy, regulation or statute requires BOP staff to provide stairway security or to monitor stairwells at any particular time or in any particular manner.[3] No specific federal regulations, national or

---

[2]  Before the attack, plaintiff had not been threatened and he had no reason to believe that he was in any kind of danger from other inmates. Furthermore, plaintiff has presented no evidence that prison staff knew that he was at risk of attack by other inmates.

[3]  Plaintiff argues that defendant provides no evidence that USP-Leavenworth did not have such a policy. On August 30, 2006, the Court ordered the government to "submit all documents related to any BOP or USP-Leavenworth policy, regulation or practice on duties of prison personnel during inmate movements and, in particular, inmate movements in stairwells of a prison." Memorandum And Order (Doc. #63) at 3, 8. Because of security concerns, the Court permitted the government to file the information under seal. On September 15, 2006, the government submitted a response to the Court's order with numerous attachments including plaintiff's various requests under the Freedom of Information Act, the BOP responses and any documents withheld from the responses because of security concerns. See Defendant's Submission To The Court Under Seal Relative To Court's Order Of August 30, 2006 (Doc. 63) (Doc. #69) filed September 15, 2006. The BOP states that it has been unable to locate specific national or local policies or practices related to inmate movements generally within prisons or specifically in stairwells.

The BOP response is in letter form and technically does not comply with D. Kan. Rule 56.1. The BOP response, however, is not critical to defendant's motion for summary judgment and is similar to a response to a request for documents under Rule 34, Fed. R. Civ. P. Plaintiff has not had an opportunity to review the response under seal. In these circumstances, out of an abundance of caution, the BOP response should be verified in compliance with D. Kan. R. 56.1(d). On or before **March 7, 2007**, defendant shall submit a verified response to the Court's order of August 30, 2006. The Court will stay entry of judgment in this case until after it has reviewed the verified response.

Plaintiff also argues that prison staff violated a mandatory duty to "monitor inmate movement" as established in BOP policy and USP-Leavenworth post orders. See Plaintiff's Submission Of Documents To The Court Relative To Documents Submitted Under Seal By The Government (Doc. #78) filed November 30, 2006 at 1-3; Plaintiff's Surreply To Defendant's Response to Plaintiff's Response On Defendant's Motion To Dismiss Or In The Alternative Motion For Summary Judgment (Doc. #73) filed October 20, 2006 at 2-5. Even if the Court assumes that prison staff have a mandatory duty to "monitor inmate movement," the decision how to fulfill that duty is discretionary. Post orders from USP-Leavenworth state generally in several parts that staff should "monitor the unit." The post orders also state that they are simply a guideline and that staff should use judgment in individual situations. None of the policies or post orders suggest that a staff member must be present in the stairwell at all times during controlled movements or that staff must have constant eye contact on every inmate during controlled movements. Plaintiff has not alleged or presented evidence that any special national or local monitoring
(continued...)

4

institutional policies, or specific post orders address stairwell security within BOP institutions. Staff are not required to monitor stairwells at any particular time, in any particular manner, or at any particular institution. The Warden and staff at each prison have discretion on these issues, potentially with input from Regional and Central Office officials. Decisions concerning specific physical monitoring or surveillance of the inmate population varies from institution to institution, and can encompass a number of factors including security and custody levels, the mission of the institution, the nature of the inmate population, the physical structure of the facility, the specific time of day, inmate activity in the area and/or recent incidents in a particular institution or location within an institution.

Prison staff are responsible for maintaining the security of individual institutions with limited staff and resources. In determining whether to monitor specific stairwell areas at a particular time, prison staff consider several factors including (1) the unique nature of the institution, (2) availability of staff, (3) potential for an incident to occur and (4) monetary costs for staff and equipment needed to monitor the area. Monitoring needs may vary, daily or hourly, with changing correctional security issues.

Decisions how to position prison staff members are grounded in economic, social and political policies. Limitations on resources play heavily into a prison's ability to monitor the inmate population in various areas. Many areas within a prison receive only intermittent staff supervision. Prison staff focus

---

[3](...continued)
procedures applied to the inmates who attacked him. In these circumstances, plaintiff has not presented sufficient evidence to create a genuine issue of material fact whether defendant breached a mandatory duty.

Plaintiff also argues that he challenges the monitoring of inmates during "controlled movements," not the general monitoring of inmates in stairwells. In either case, plaintiff has not shown that a policy, regulation, statute, or post order sets forth specific security measures for "controlled movements" or monitoring in stairwells.

resources on locations where inmates work, reside, undergo programming, etc. Less supervision is ordinarily given to traffic ways or less occupied areas within the prison. The process of providing internal security, including decisions regarding the appropriate level and frequency of inmate monitoring, takes into account inmate movement within the institution that is deemed necessary to achieve rehabilitative goals and/or to safeguard constitutional rights of the inmate population. Such movement can be necessary (1) to accomplish various programming needs of the inmate population, including work programs, mental health/substance abuse treatment programs, and education; (2) to provide access to a law library or legal visits; (3) to provide social visitations; (4) to provide access to religious services; (5) to provide appropriate medical, mental health and dental care; (6) to provide access to recreation activities; and (7) to facilitate feeding of inmates.

Prison staff also must maintain inmate population in the least secure environment consistent with an inmate's security needs. This correctional goal is necessary to aid the inmate's rehabilitation and transition back into society. Freedom of movement within the general population is one aspect in this effort. Except for a very small minority of the federal inmate population, such socialization objectives can only be met by allowing inmates the opportunity to move relatively freely throughout the housing unit and other areas of the prison during normal daytime hours.[4]

Plaintiff brings suit under the FTCA, alleging that he suffered an assault by another inmate because

---

[4] The declaration in support of this fact actually states except for "a very small majority," Declaration of Correctional Programs Administrator D. Hudson ¶ 8, attached as Exhibit 2 to Defendant's Memorandum In Support Of Motion To Dismiss, Response To Plaintiff's Motion For Summary Judgment, And For Cross-Motion For Summary Judgment (Doc. #40). In context, however, it seems clear that the declarant meant to refer to "a very small minority."

6

prison staff failed to monitor and supervise the stairwell at USP-Leavenworth. See Amended Complaint (Doc. #34) filed May 1, 2006 at 2-3.[5]

## **Analysis**

The government argues that the Court lacks subject matter jurisdiction because plaintiff's claim is barred by the discretionary function exception to the FTCA.[6] The FTCA constitutes a limited waiver of sovereign immunity for the United States and with certain exceptions, renders the federal government liable in tort as a private person would be in like circumstances. 28 U.S.C. § 1346(b) (limited waiver of sovereign immunity for damages caused by negligent or wrongful act or omission of any employee). Because the FTCA constitutes a waiver of the sovereign immunity of the United States, the Court must strictly construe it in order to prevent expanding the waiver beyond what Congress intended. See Pipkin v. U.S. Postal Serv., 951 F.2d 272, 275 (10th Cir. 1991); Bradley v. United States, 951 F.2d 268, 270 (10th Cir. 1991). The FTCA waiver of sovereign immunity is jurisdictional in nature so that if the action is barred, the Court lacks subject matter jurisdiction over plaintiff's claim. See id.

One exception to the FTCA's general waiver of sovereign immunity is for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or

---

[5] Plaintiff asserts three counts: the BOP did not protect him from harm under 18 U.S.C. § 4042 and local institutional policy (Count I); the BOP did not monitor inmates during the controlled movement (Count II); and the BOP was negligent in monitoring inmates during the controlled movement (Count III). The three counts are based on identical facts and constitute a single cause of action for negligence under the FTCA.

[6] Because the government has presented factual matters outside the pleadings and resolution of the jurisdictional question is intertwined with the merits of the case, the Court considers only the government's motion for summary judgment. See Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).

regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine whether conduct is encompassed by the discretionary function exception, the Court applies a two-part test. See Berkovitz v. United States, 486 U.S. 531, 536 (1988). First, the Court must consider whether the challenged conduct was "discretionary," i.e. whether it was "a matter of judgment or choice for the acting employee." Harrell v. United States, 443 F.3d 1231, 1234 (10th Cir. 2006); see Berkovitz, 486 U.S. at 536; Lopez v. United States, 376 F.3d 1055, 1057 (10th Cir. 2004). If the challenged conduct was discretionary, the Court must consider whether it was the type of decision the discretionary function exception was designed to protect, i.e. one requiring the exercise of judgment based on considerations of public policy. See Berkovitz, 486 U.S. at 536-37; Lopez, 376 F.3d at 1057.

As to the first prong, the Court must determine whether the challenged conduct (1) involved a matter of judgment or choice or (2) involved a prescribed course of conduct. See Elder v. United States, 312 F.3d 1172, 1176-77 (10th Cir. 2002); Kiehn v. United States, 984 F.2d 1100, 1102 (10th Cir. 1993). Here, the challenged conduct – the BOP prison staff decision not to post a security officer in the stairwell during the controlled movement on May 4, 2004 – involved a matter of judgment or choice. In general, the BOP, under the direction of the Attorney General, shall provide for the "safekeeping," "care," and "protection" of inmates in its custody. 18 U.S.C. § 4042(a)(2), (3). Because Section 4042 imposes only a general duty of care on the BOP, prison officials have discretion in deciding how to accomplish these objectives. See Campillo v. U.S. Penitentiary Beaumont, Tex., No. 05-40626, 2006 WL 2927356, at *1 (5th Cir. Oct. 11, 2006); Montez v. United States, 359 F.3d 392, 396 (6th Cir. 2004); Santana-Rosa

v. United States, 335 F.3d 39, 41-45 (1st Cir. 2003); Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998); Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997). No policy, regulation or statute requires BOP staff to provide stairway security or to monitor stairwells at any particular time or in any particular manner.[7] In determining whether to monitor specific areas at a particular time, prison staff consider several factors including (1) the unique nature of the institution, (2) availability of staff, (3) potential for an incident to occur and (4) monetary costs for staff and equipment to monitor the area. In these circumstances, the challenged conduct involves a matter of judgment and choice. See Bell v. Wolfish, 441 U.S. 520, 547-48 (1979) (prison administrators afforded wide-ranging deference in adopting and executing policies and practices that in their judgment are needed to preserve internal discipline and maintain institutional security); Montez, 359 F.3d at 395-97 (BOP decisions on inmate safety discretionary); Santana-Rosa, 335 F.3d at 43 (BOP exercises broad discretion in assigning inmates to particular jobs and where and how to store cleaning equipment used to attack another inmate); Alfrey v. United States, 276 F.3d 557, 565 (9th Cir. 2002) (regulations did not mandate BOP to conduct cell searches in particular

---

[7] Plaintiff states that at the time of the attack, no one was monitoring or supervising inmate movement consistent with established custom and history at USP-Leavenworth. See Affidavit of Samuel R. Queen at 1-2, attached to Plaintiff's Declaration In Opposition To United States Motion For Summary Judgment (Doc. #68) filed September 14, 2006. Even if prison staff at USP-Leavenworth negligently failed to position staff in the stairwell, however, the discretionary function exception protects decisions at the operational level. See United States v. Gaubert, 499 U.S. 315, 325 (1991). Likewise, even if prison officials had a custom or practice at USP-Leavenworth to monitor stairwells during inmate movements, their decision whether to follow that custom or practice on a particular day is protected by the discretionary function exception. See Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 977 (10th Cir. 2004) (discretionary function exception applies even where government undertakes duty and breaches duty, if nothing more than negligence would be established by breach). Plaintiff has not alleged or provided evidence that prison staff knew that plaintiff specifically was at risk of attack by other inmates. In fact, plaintiff had not been threatened before the attack and he had no reason to believe that he was in any kind of danger.

manner); Calderon, 123 F.3d at 949 (regulations did not mandate BOP to take specific action in event of threats from fellow inmate); Mitchell v. United States, 149 F. Supp.2d 1111, 1114-15 (D. Ariz. 1999) (day-to-day security considerations, including rules about who can enter housing unit, are policy decisions within discretion of BOP), aff'd, 20 Fed. Appx. 636 (9th Cir. 2001); see also United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 820 (1984) (FAA employees who conducted compliance reviews of aircraft specifically empowered to make policy judgments regarding degree of confidence to place in given manufacturer, need to maximize compliance with regulations and efficient allocation of agency resources).

As to the second prong, the Court must determine whether the challenged decision was the type of decision the discretionary function exception was designed to protect, namely one requiring the exercise of judgment based on considerations of public policy. The decision where staff is positioned at any given time is based on several economic, social and political policy considerations such as (1) availability of resources, (2) inmate access to programs and other opportunities to achieve rehabilitative goals and/or to safeguard inmate constitutional rights, (3) maintaining the least secure environment consistent with inmate security needs to aid inmates' ability to rehabilitate and transition back into society. See Santana-Rosa, 335 F.3d at 43 (BOP decisions regarding inmate work assignments and maintenance of cleaning supplies susceptible to policy-related analysis); Alfrey, 276 F.3d at 565 (prison staff decision as to scope of cell search involves balancing of risk posed and inmate interest in freedom from intrusive searches); Calderon, 123 F.3d at 951 (balancing need for inmate security against rights of inmates to circulate and socialize within prison involves considerations based upon public policy); Mitchell, 149 F. Supp.2d at 1114 (decisions as to day-to-day security needs of prison, including number of guards in given area, where to

place emergency alarms and tactical choices surrounding inmate movement within institution are judgment calls based on policy determinations which seek to accommodate safety goals and reality of finite agency resources); see also Varig Airlines, 467 U.S. at 820 (FAA engineers and inspectors necessarily took certain calculated risks in compliance reviews of aircraft, but those risks were encountered for advancement of governmental purpose and pursuant to specific grant of authority).

In sum, as a matter of law, defendant's alleged conduct is protected by the discretionary function exception to the FTCA. The Court therefore lacks subject matter jurisdiction to hear plaintiff's claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss And Cross-Motion For Summary Judgment (Doc. #39) filed June 9, 2006 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Deny United States Motion to Dismiss, Cross Motion For Summary Judgment And Response To Plaintiff's Summary Judgment Motion (Doc. #65) filed September 14, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that on or before **March 7, 2007**, defendant shall submit a verified response to the Court's order of August 30, 2006. The Court will stay entry of judgment in this case until after it has reviewed the verified response.

Dated this 26th day of February, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Court

11